Good morning, Your Honors. May it please the Court, Leon Hazani and Neville Asherson appearing for the petitioner and appellant. Your Honors, in this particular case, the petitioner believes that the issue is whether the district court gave the petitioner an adequate opportunity to address all issues on her petition and complaint. We believe that the denial of the restraining order essentially denied her due process rights to do that and her rights under all of the other laws which were addressed in this particular case. The Court has asked me to brief a number of jurisdictional issues, which I'm happy to do. First, the Ruger-Feldman does not bar jurisdiction in this particular case. The Ruger-Feldman doctrine applies where state court proceedings have ended. That's not what took place in this particular instance. Here, they have not ended at all. Rather, a trial court made a decision on the Hague petition and prior to that state litigation having ended, the petitioner filed her additional claims, which were further and separate claims in federal court. The state claim was still on appeal and under the Ruger-Feldman doctrine, there was no end to the state court proceedings. I would point out that Still, isn't the essence of your complaint a challenge to the final state court order? I don't believe that that's the sole challenge. We do believe that there were a number of errors in the state court proceedings. But if we were to find in your favor, wouldn't we be necessarily saying the state court was wrong? I don't believe so, because the petitioner has raised several separate and distinct issues, which under the Ruger-Feldman doctrine are appropriate and the federal court should have exercised its jurisdiction to address those issues. Okay. So what are those distinct issues? The further and separate issues are a number of them. First of all, the petitioner fled Ecuador to the United States and upon entry to the United States, immediately filed for protection under the United States Asylum Withholding and Convention Against Torture Laws. That precedes any state court filing, any Hague court findings. Now, this is Ms. Cucullan herself filed for that? She filed the petition on behalf of herself and her children. Her children. Subsequently, the children attempted to file their own independent petitions. However, the Immigration Service refused to accept those petitions on the basis that the issues were already going to be considered on behalf of them under the original petition that was filed under Ms. Cucullan as the petitioner and them as the beneficiaries. I believe petitioner. Yes. Okay. So what is the status of those CAT proceedings? Your Honor, the status of those CAT proceedings is that I believe, first of all, they have not been concluded. She's never had an opportunity to have her asylum withholding and CAT claims adjudicated. A petitioner is entitled to have an asylum claim expeditiously adjudicated by immigration. But can she have those? She can have those adjudicated even if she goes back to Ecuador, can't she? I don't believe that's so. I believe once she leaves the United States, her asylum and withholding petitions would fall away, as well as the Convention Against Torture Petitions. But now the state order only requires her children to be returned to Ecuador. Could she stay here and continue in those proceedings? Well, if the children were to leave and were subsequently granted asylum, they wouldn't be able to benefit from that grant of asylum or Convention Against Torture because the immigration service would independently have to allow them to come back to the United States. That's something that may or may not ever take place. Furthermore, she's entitled to have those proceedings expeditiously adjudicated. The immigration has taken years to adjudicate those particular cases or that particular petition in this case and is in fact requested, as I filed in my letter brief, a second unusual interview in this case. Generally, an interview takes place within four weeks of filing the petition and 14 days thereafter. Immigration either chooses to grant the asylum withholding claims or to refer the matter to the immigration court. That should have occurred a long time ago. I'm having trouble, maybe you can explain to me, understanding the relationship between our immigration laws and the Hague Convention Treaty. And even if she got all favorable results in her immigration case, why would that have any effect on our obligations under ICARA, I guess it is, and the Hague Convention Treaty and that obligation to send the children back? Well, in a number of ways, the immigration laws, I believe, are in addition to her Hague Convention rights. Under ICARA, Congress recognized that the Hague Convention rights and the ICARA rights are just one remedy and that parties are allowed to explore and to present their additional remedies that are available to them under the law. Under the Convention Against Torture, for example, the United States is absolutely forbidden from returning anyone, including the petitioner and her children, to a situation in which they fear torture and should have an opportunity to at least be able to establish that her She's never been given that opportunity. Can you explain how the relationship between the CAT regulations, which are all under the immigration laws, the relationship between those and the Hague Convention obligations? Because the FARA statute seems to limit our jurisdiction to looking at CAT claims in the context of the immigration proceedings. Your Honor, I would have to respectfully disagree with that. I believe that the Convention Against Torture claims trump the Hague Convention claims in this particular case and the order of return for a number of reasons. First, the Convention Against Torture language is absolute. No person shall be returned where they fear torture. No person shall be returned. I believe that that's an absolute declaration that it shall not take place. And the Hague Convention under ICARA recognizes that people have these independent rights. Also, the Convention Against Torture has not only been recognized in immigration cases. For example, the district court erred by finding that the Convention Against Torture is not a self-executing document, and therefore the petitioner doesn't have a right to proceed under her Convention Against Torture claims. That's not correct. The courts have repeatedly held that you can bring Convention Against Torture claims by filing a habeas corpus petition, which is the jurisdiction that the petitioner asserted in this particular case. Well, what case are you referring to that's outside of the immigration context? Outside of the immigration context, Your Honor, I would refer to Wang v. Ashcroft. That's a Second Circuit decision of 2003 holding that CAD is not self-executing, but regulations may be enforced by habeas corpus. I'd also refer to Reyes v. Ashcroft. That's a Southern District of New York case. And Calderon v. Reno, Northern District of Illinois. And I have the sites for those cases. Would you please fill out a statement on those? Counsel, could you please address at some point why we have, like, a habeas jurisdiction if she is not in custody? Your Honor, I believe that there's not only habeas jurisdiction, but there's also Federal Question jurisdiction. In regard to the habeas jurisdiction, the United States Supreme Court has held, and this Court has recognized, that a person doesn't have to be in physical custody in order to avail themselves to their rights under a habeas corpus petition. Custody has been defined by the U.S. Supreme Court to be extremely broad and to go beyond where a person is in actual physical custody, but rather situations where they're not. So would you say, you say that the constraint of the State court to allow a person to be in physical custody under the State court decision is enough? What is the Supreme Court case? The Supreme Court case is Hensley v. Municipal Court, 411 U.S. 345, and also Jones v. Cunningham, 371 U.S. 236 at 240-43. And those, in those cases, they expanded the concept of custody in coverage even where a person is not physically detained. Also, in Rumsfeld v. Padilla, 542 U.S. 426, the Supreme Court there held our understanding that custody has broadened to include restraints short of physical confinement. All right. So what is the restraint that you're challenging here? Well, I believe that there's a number of different restraints here, coming back to why the  number one, the State Department, which acts as an agent in this particular case, is the one that filed the Hague petition. By filing the Hague petition, the State Department chose to file it in State court disregarding the asylum withholding and convention against torture claims that had been filed first. They either knew about them or should have known about them and should have known that the federal court issues could never have been fully adjudicated and resolved in the State court. It was not the real party in interest, nor the petitioner here, who chose the State court as the forum. It was the Department of State agent who chose the State court as the forum. Also, the State court, the Department of State, through their agent, was ordered to file in Ecuador, would be able to seek protection in Ecuador and that the abuse wouldn't be repeated while custody proceedings were pending. The State Department chose not to file anything, despite the fact that they had been ordered to do so by the court and despite the fact that there was evidence available to the Department of State by way of the country conditions reports, which evidenced Ecuador's inability to protect the children and the petitioner from their abusive husband and the domestic violence issues are treated rather weakly at best by Ecuador and that there was a prevailing problem in Ecuador with the treatment of abused women and children. Furthermore, I would say that the fact that she has not been given and afforded an opportunity to present her asylum withholding and convention against torture claims violates her rights under those statutes, which enable her to seek those remedies and the children's rights to seek those remedies as well. The State court was not the appropriate forum to hear the claims, at least not all of them, and certainly, the Department of State could have instead used the Hague concurrent jurisdiction and filed in Federal court. I would also argue, under the Ruker-Feldman doctrine, not only that there isn't an end to these proceedings, but in Exxon, this court's case of Noel versus Hall, the court has repeatedly held that parallel proceedings are entirely appropriate and that the issue really is whether state issue preclusion issues come into play, and they don't. Under California law, issue preclusion can only be asserted by the defendant, which I don't believe it was, and furthermore, the state law requires that they prove that the issues had been considered in the state court. The defendants or the respondents in this case not only have not done that, but they're unable to do it because the asylum withholding and convention against torture issues have never been adjudicated by anyone, and her independent claims against the State Department have never been adjudicated. Under Noel versus Hall, at 1159, the rule that permits simultaneous litigation in state and federal court of overlapping and even identical cases is deeply rooted in our system. As the court wrote in Atlantic Coastline Railroad versus Brotherhood of Locomotive Engineers, the state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from committing duplicative cases and concludes with the sentence, holding the parallel state and federal litigation is inherent in our legal system, and that the possibility of duplicative litigation is a price of federalism. Several pages further, the Ninth Circuit holds, this is at 1163, on the other hand, where the federal plaintiff does not complain of legal injury caused by a state court judgment, but rather of legal injury caused by an adverse party, the Ruker-Feldman does not bar jurisdiction. Here the petitioner is complaining of injuries caused not only by the respondent, but also injuries caused by the Department of State, and the Ruker-Feldman Doctrine does not apply. I would also go on, in the same case, the Ruker-Feldman Doctrine asks, this is at 1164, the Ruker-Feldman Doctrine asks, is the federal plaintiff seeking to set aside a state court judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction. If the latter, then there is jurisdiction, and state law determines whether defendant prevails under principles of preclusion. And here, she has made an independent claim of harm by the government, and at the very least on that basis, is entitled to have the district court's decision reversed, as it did have jurisdiction. The Ruker-Feldman Doctrine did not apply, and state issues of preclusion also did not bar her claim. And I have those state court sites as well, which hold, and I believe it's very well utilized, where the defendant can prove that the issues were presented in a first state court action, and were adjudicated. That is not what's happened here. No one has adjudicated these additional and further claims. No one. And the defendants never presented any evidence contrary to that. And in fact, they cannot present evidence that's contrary. Counsel, do you want to reserve some time, and let the government argue, and then Yes, Your Honor. Take up the rest of your time? Okay, thank you. Are you splitting your time? All right. Good morning, Your Honors. Amaka Ada Akudinobi, for the Real Party in Interest, Freddie Ramos Andrede. Your Honor, the issues here before us today, it's not just simply whether the petitioner in this case, whether her rights under the card was violated by the state court. The major issue, Your Honor, is the petition was filed in the state court. While the petition was in the state court, there was no objection or an issue of whether the case should be removed from the state court to the federal court. Sorry, from the state court to the federal court. That was never an issue before the court. The petition that was filed was with regard to my client's rights under the card, and wrongful removal of his children from Ecuador to America by the petitioner in this case. There was several days of litigation in this case, several hearings. The petitioner had a full opportunity to be heard, called her witnesses. There was a redemptory hearing. She actually even called her experts. So there was no issue as to whether her rights were not fully litigated. Her rights were fully litigated, and the court eventually made a decision, which I believe was right and which I also believe was final. Therefore, based on that court's decision, I do believe that the Rocha-Feldman doctrine applies here and precludes the court from... There has not been an appeal to the California Supreme Court. The appeal they had was to the Second Appellate Division. That was denied August 29th of last year. Since then, that's where it's ended. There has not been an appeal, and I believe the time to file an appeal on that aspect, it's over. Can you explain why it is we don't have habeas jurisdiction to hear the petitioner's claims? I do believe that what the petitioner is trying to do right here is to get indirectly that which she couldn't get directly, in terms of the fact that I don't believe that... Even if the court has the authority to hear a habeas motion to see if they could hear the case, what she's trying to do is to get through the back door that which she couldn't get directly from the court, given the fact that the CAT Convention itself, the CATS itself, does not apply here. It does not create in itself a unique or an enforceable right. What she's trying to do is to have the CAT in itself entitle her, to become a right she's entitled to, to become a unique right that is available to her in terms of staying the proceedings, staying the Hague proceedings pending the outcome of the CAT asylum petition with the immigration. I do strongly believe that's what she's trying to do here, and if the court hears the habeas case in terms of the way that they're asking, then the court will be allowing her to get a right that she was not initially entitled to, because what she's asking for is for all the Hague petition proceedings and decisions to be stayed pending the outcome of her Convention Against Torture or Asylum petition. Right, and she has her interview this week, her second interview this week, right? Well, prior to the letters, we just became aware of that last week, that she has an interview this week. But then this has been an ongoing thing. My client has had his, has basically had to stay and wait for the rights that he's obtained from the courts, you know, to be enforced. She does not have to go back to Ecuador. The Hague Convention calls for the return of the minor children and not her return to Ecuador. It is the minor children that needs to be returned to the country of their habitual residence. It does not mean that the courts here have ruled that the minor children need to be returned to my client's custody when they get to Ecuador. Clearly, the same petitioner that is complaining about the court system and judicial system in Ecuador continuously, and as we speak, still has litigation going on in Ecuador. I'm still not following how we have, how a claim for habeas relief has been stated, but I guess I'll save that for you to answer for me on your rebuttal time. In terms of the court's questions as to, the questions the court has asked us to address in oral argument, I believe we've addressed the first question, and that we do strongly believe that the Roca-Fedman doctrine applies here, and that she's submitted to the jurisdiction of the state of Ecuador. She had an opportunity to have the case removed to the federal court, given the fact that, according to her, that she had filed an asylum. The issue of whether there was an asylum, her immigration issue, was actually raised in the state court. She indicated to the state court, I believe, that she had filed an asylum. But the full nature of it, she had an opportunity at that point to address it. She had competent counsel and had an opportunity at that point to address it, to raise issues as to whether there should be a stay in the court, in the state court proceeding, and have the case removed to the federal court. But that issue was never raised. That issue was, the issue of the proceeding being held in the state court was never objected to. It did not, basically died at that point. And were any of the CAT issues raised in the state court proceeding? No. To my recollection, no. There wasn't any CAT issues raised in the state court proceeding. In terms of whether principles of issue preclusion bars the court from considering the relief under Article 3. Clearly, if we look at FARA, FARA clearly indicates that CAT in itself, Article 3, does not create an enforceable right in itself. Therefore, the petitioner in this case cannot rely on that to create a right that she does not have under the law in terms of having the proceedings here stayed. It should not be stayed and the court needs to give full faith and credit to the lower court's orders here. The lower court in making those orders sat as a, basically a concurrent jurisdiction as a federal court because it was sitting as a tribunal under the Hague Petition, under the Hague Convention. Finally, as to the issue of whether she had due process rights, where... where violated, I do not believe that her due process rights were violated in this case. As we've previously indicated, she had counsel, she did not ask for a case to be removed, she had a full opportunity to litigate the case, called her witnesses, and the court made a decision based on the facts of the case. Thus, there is, we believe strongly that there is no reason to have this case stayed, to have the court's decision stayed pending the outcome of a COTS, a COTS petition. Thank you. Good morning, Your Honors. Keith Staub on behalf of the State Department. There's no question that this is a difficult case for this court. It's one with serious implications for the children. I just wanted to point out the State Department has a very limited role in Hague Petition proceedings such as this. It rarely is named as a party to such a case, and that's because the parents are best equipped to address the merits of the case. In fact, the State Department is precluded from advocating either side's position on the case. The State Department does not enforce Hague rulings, the State Department does not take children into custody, nor does the State Department adjudicate Hague petition cases. It is simply a facilitator to help assist people who want to file petitions. That being said, we believe that from a jurisdictional aspect, the district court properly gave full faith that the state court's decision, as it was required to do by the Hague Convention itself, and by this court's decision and holder. I don't believe the court does, Your Honor, and the reason I say that is because the appellant is not in custody, either physical or constructive custody. No law enforcement officials are taking her into custody and removing her. Certainly not the State Department, who has no role in taking custody of anyone. It would be the children, though, who are subject to the order for return to Ecuador. So the question would be whether they're in custody under the Supreme Court's expanded view of what in custody constitutes. I don't believe that even assuming a broad construction of the habeas jurisdiction that it would apply in this case. It typically is applied in removal cases or immigration cases or prisoner cases. I don't think that it would apply in this case under the circumstances. We do have this case, I guess it's Nacarana Rock, where we held that persons who are subject to a deportation order, even though not in physical custody, could gain our habeas jurisdiction. And I'm just wondering whether this sort of order that the Superior Court gave, sitting as a treaty tribunal is what it styled itself, and ordering them to be subject to return to Ecuador. Whether that is analogous or whether you think that's distinguishable from those sorts of in custody cases. I think it's distinguishable. As you pointed out, it was a removal case, an immigration case, where if, you know, where deportation officers would go, and even if they're not in custody at the time, deportation officers would go and take custody of them, physically remove them, and return them to their country of origin. And nothing will happen to these children if the mother doesn't comply with the court's order? Or what will happen to the children under the state court order? It's my understanding from a reading of the state court's order that if the children didn't voluntarily show up at the airport, that the father would then have custody to come and take the children and return them. There was no, as far as I know, of any order that said law enforcement was to get involved or any governmental entity. Well, the LA County District Attorney's Office does have custody of their passports. And the passports won't be returned until they actually show up at the airport to return to Ecuador. So how does that affect our analysis? Well, I think it certainly gets to a much closer issue of whether there is custody, if they have custody of the passports. But I don't think that the habeas jurisdiction would apply here, because there's no law enforcement people taking custody. They're not under constructive custody. I think the fact that the DA has the passports doesn't necessarily mean that they would be considered constructive custody. Well, it means they can't go anywhere, is what it means. They can't leave this country for any other country other than pursuant to this order, right? That would seem to be the implication, Your Honor, yes. And I would like to address some of the other jurisdictional issues, if the Court would allow, regarding the Rooker-Feldman Doctrine. Okay. It seems clear from my reading of the Knoll case that the Court decided that whenever a plaintiff is attacking a judgment by a state court, that it would be considered a de facto appeal for the District Court to review that. I don't think there's any question in this case that that's exactly what the appellant is doing. They're attacking the judgment by the state court, and they're asking the District Court to basically review that on appeal, and that's barred by the Rooker-Feldman Doctrine. I think that regarding the Catt claim and asylum claims, again, it's my understanding that Catt would only apply if there were, if the people were in removal proceedings, which is not the case here, they're under no immigration or removal proceedings. There is an asylum claim pending. And Catt would trump the Hague Convention, the orders pursuant to the Hague Convention? I think that's a case of first impression. I have not seen any case that says that. I have not seen any case that discusses both having been filed. Because Catt is no person shall. It's an absolute. And I'm just wondering, suppose the immigration proceedings go forward and continue, which they seem to be, and the petitioner and her children are granted asylum or relief under Catt, whether they would be entitled to remain in this country? I'm not sure that that is clear by either cases or statutes. I would point out to the Court, however, that if a Hague petition case is stayed in cases where there's an asylum pending, conceivably an asylum can be pending for many years for it to go through the law. It shouldn't be, but you're right, they do. Even after it's adjudicated, assuming if it's denied, for example, they can go to the BIA, then they can go to this Court for review, which could take years. If that were the case, that would completely circumvent the intent of the Hague Convention, which is to remove the children immediately. It would essentially be preventing those children from being removed simply by filing an asylum claim. But your opposing counsel stated that if she does comply with the state court order, then she loses her right to continue, move forward with her Catt claim. Is that correct? Is that your understanding? I honestly don't know the answer to that. I don't know. The Court posed that question, and I was asking myself the same thing. Would they, after removal, be allowed to pursue that? And I don't know the answer to that. This case presents many questions of first impressions. There was some discussion that the district court should have considered somehow the asylum claim. I don't think that was before the district court. It was still pending. It hasn't been exhausted administratively. The district court couldn't address that, and certainly the state court couldn't. I don't think the state courts can address federal immigration cases. Do you know whether we have any cases saying that domestic violence constitutes persecution? I do not know that offhand. I'm sorry. Unless the Court has any further questions, I would submit a brief. Judge Wardlaw, to answer that last question, in Ray R.A., that's the famous case of Rody Alvarado, Interim Decision No. 3403, where the Attorney General, Janet Reno, reversed the BIA's holding that domestic violence does not constitute persecution because it didn't fit into any of the enumerated grounds. It has been held that it can constitute political opinion where you try to get away with it. It's been held to be a social group where you're the spouse of an abuser and where you're a member of a particular family. But I would refer the case to In Ray R.A. and Federal Register Volume 65, No. 236, which in response to the Attorney General's decision in that case, changed the regulations and the scope of what constitutes a particular social group to address domestic violence claims specifically. I would also just like to briefly touch upon a number of the other issues. The respondents seem to have argued that CAT does not apply outside of the immigration context. I would strongly disagree with that. CAT has been held to apply in context outside of immigration and should be held to apply here as well. It has been held to apply, for example, in extradition proceedings. And the United States has a system for extraditing foreign-registered criminals. And here, CAT was found to trump the extradition statutes of the United States. So I agree with your statement or reading earlier of CAT that it is, in fact, absolute rather than discretionary. Furthermore... Did the CAT claim have to be asserted in the hate convention case? I don't believe it had to be asserted in the hate convention case, nor do I think a state court judge was suitable to assert the CAT, you know, review a CAT or asylum claim or any issues ancillary thereto. State court judges often decide federal law questions. This is more than a federal law question, Your Honor. I would just point to the Ninth Circuit outline on immigration issues, which is hundreds of pages. The courts across the country, the federal appellate courts, have been struggling with the immigration issues. I don't believe that any state court judge, particularly when one takes a look back at the way these hate proceedings were handled by him, is suitable to address any asylum claims whatsoever or convention against torture claims. I would also point out that it's not just the petitioner's asylum and convention against torture claims. It's also the children's. And their rights, I believe trump their abuser's right to have them speedily returned. They at least should have an asylum claim. And I think that's a good point. Ginsburg. All right. Will you explain the basis for asserting habeas corpus jurisdiction? Well, I believe that habeas corpus jurisdiction applies in this case. Well, I know that. But I want to know, what is the restraint? Is it the fact that the passport? I mean, she doesn't seem to be aware of the fact that the passport is a restraint. The Supreme Court order is a restraint. But in addition to the Supreme Court, Superior Court order, there's a number of other factors, one of which is that the district attorney acting on behalf of the Department of State is in possession of the passports. And when prior to this court's issue, they have all three passports at this point in time. They originally had the Miss Cuccolone's passport. And prior to this court issuing a stay of the state court order, the district attorney demanded for the children's passports to be handed over to them, as well as the travel schedule of the children. The district attorney acting on behalf of the Department of State has taken steps to enforce that order and will, absent a federal court order preventing it. Prior to the asylum and convention against torture claims being heard and the claims against the Department of State's impropriety. And just because someone calls themselves neutral doesn't make it so. The Department of State has opposed these proceedings and all the stays all the way up until this point in time. And they were the ones that initiated the proceedings by filing a petition in state court rather than federal court, which was far more appropriate to address these issues. The other issue I would point out is that both respondents' counsel has alluded to the fact that either an objection was needed to be stated to the state court proceedings or that the Ruker-Feldman doctrine applies. I think that that's just a blatant misstatement of the holding in the Exxon case, as well as this court's decision with regard to the Ruker-Feldman doctrine. And in Exxon, specifically the Supreme Court found that filing parallel proceedings should not be considered as an objection. It is not a bad idea at all, but should be encouraged where you have separate individual claims that can be raised. And in this case, there are separate individual claims that can be raised, have been raised, and were raised before the state court litigation ever ended. All right. Thank you, counsel. All right. You had time left. Go ahead. The issue of the passports routinely in Hague petition cases when there is an order for return, and in particular in this case, the basis on which the passports were ordered, sent to the DA's office, was so that there wouldn't be an issue of flight risk, flight risk by the mother. There has been several instances where there is an order for return, and the party is left with his or her passport. So doesn't that mean that they're restrained? They're restrained in this country? They can't leave? Your Honor, the issue is whether if those passports are returned to the mother, is there any way for the courts to make sure that she obeys the court order? I understand why they did it, but I'm saying for purposes of habeas jurisdiction, maybe that's sufficient to invoke our habeas jurisdiction. Not necessarily, because she's free to move around. She's free to move around within the United States, but she can't go to Canada or Mexico. Again, that's the same thing that it goes to their own argument in terms of the CAC petition that she has filed, the asylum petition, that if she's returned to, if she goes back to Ecuador, her country of habitual residence, that she will not be free to come back. But there is no other way to assure that those children will not be removed or reclaimed. They will not be kidnapped or basically removed to another state, and then begin the process of searching and finding the kids again. Right, I understand that. All right. Thank you, counsel. Very nice argument on both sides. And this Court for this session shall be adjourned. Thank you.
judges: Wardlaw, Gould, Ikuta